IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Quality Gold, Inc.,            )
                               )
         Plaintiff,            ) Case No. 1:11-CV-891
                               )
     vs.                       )
                               )
Trent West,                    )
                               )
                               )
         Defendant.            )

O R D E R

This matter is before the Court on Defendant Trent West's motion to dismiss or transfer the case.  (Doc. No. 3). Also pending is Plaintiff Quality Gold, Inc.'s motion to file a sur-reply brief. Doc. No. 10.  Because the Court finds that transferring this case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a) is appropriate, Defendant's motion to transfer is well-taken and is **GRANTED.**  Plaintiff's motion to file a sur-reply brief is not well-taken and is **DENIED.**

Defendant Trent West holds a number of patents directed toward methods for making tungsten or tungsten carbide jewelry rings.  As is relevant here, West owns U.S. Patent 6,928,734 ("the '734 Patent"), dated August 16, 2005, U.S Patent 7,032,314 ("the '314 Patent"), dated April 25, 2006, and U.S. Patent 8,061,033 ("the '033 Patent"), dated November 22, 2011.  These

patents are family members of a patent application filed in September 1997 which matured into U.S. Patent 6,062,045.

In July 2010, West sued Quality Gold, Inc. ("QGI") in district court in the Northern District of California for infringement of the '734 Patent and the '314 Patent. QGI in turn filed third-party complaints against Jewelry Innovations, Inc., GMA, Inc., and Glenn A. Wright seeking indemnity on the grounds that these entities sold the alleged accused rings to QGI and violated warranties of non-infringement. In May 2011, West filed a second lawsuit against QGI in the Northern District of California which asserted a "false marking" claim pursuant to 35 U.S.C. § 292. The false marking case alleges that QGI falsely advertised that its tungsten carbide rings were patented when no such patent had been issued. The district court determined that the infringement case and the false marking case are related and both cases are now pending before Judge Davila.

As can be seen, the '033 Patent was issued to West in November 2011. In December 2011, West sent QGI a cease and desist letter asserting that tungsten rings sold by QGI infringe the '033 Patent. As a result of receiving the cease and desist letter, QGI filed in this Court a complaint for a declaratory judgment of invalidity and/or non-infringement of the '033 Patent. According to QGI's complaint, QGI is an Ohio corporation

with its principal place of business in Fairfield, Ohio and West is a resident of the State of California.

West now moves the Court to dismiss QGI's complaint or transfer it to the Northern District of California under two theories.  West argues that there is a "substantial overlap" between QGI's declaratory judgment action and the two lawsuits between the two parties pending in the Northern District of California.  Therefore, West argues that this case should be transferred to California pursuant to the "first-to-file" rule.  Alternatively, West argues that this case should be transferred to California pursuant to 28 U.S.C. § 1404(a) "for the convenience of parties and witnesses" and "in the interests of justice."  In support of the latter argument, West contends that QGI's declaratory judgment complaint can be resolved more efficiently if transferred to California because of the similarity of the patents-in-suit and Judge Davila's greater familiarity with the patents, the accused products, and the technology involved.  West also argues that the convenience of the parties favors a transfer to California since they are already engaged in litigation in that district and none of the other factors, such as the ability to compel the attendance of witnesses and ease of access to sources of proof, weigh against a transfer.

In opposition, QGI disputes that there is a substantial overlap between the Ohio case and the California cases. QGI points out that, although in the same family as the '734 and '314 Patents, the '033 Patent must given its own independent construction. Therefore, QGI believes that Judge Davila's experience with these patents will not be particularly helpful in resolving claims concerning the '033 Patent. QGI also observes that Judge Davila has only presided over his cases for about six months, and contends, therefore, that his head start over this Court in becoming familiar with the patents and technology is not substantial. Thus, QGI contends that judicial economy would not be achieved by transferring this case to California. QGI also contends that it would be more inconvenient for its COO to litigate this case in California because it would add the burden and expense of this case onto the burden and expense of litigating the other two cases in California. QGI claims that transferring this case to California is not more convenient and would simply shift the costs of litigation from West to it, which is inappropriate.

> Section 1404(a) of Title 28 provides:
>
> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. 1404(a).  The parties do not dispute that QGI's declaratory judgment action "might have been brought" in the Northern District of California.  The only issue, therefore, is whether the convenience of the parties and witnesses, and the interests of justice, indicate that the case should be transferred.

"A motion to transfer venue should be granted upon a showing that the transferee venue is clearly more convenient than the venue chosen by the plaintiff."  In re Genentech, Inc., 566 F.3d 1338, 1342 (Fed. Cir. 2009) (internal quotation marks omitted).  In considering a § 1404(a) transfer in a patent case, the district court must consider the "private interest" factors and the "public interest" factors.  Id.  The public interest factors include 1) the relative ease of access of sources to proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make a trial easy, expeditious, and inexpensive.  Id.  The public interest factors include: 1) the administrative difficulties flowing from court congestion; 2) the localized interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law.  Id.  However, "consideration of the interest of

justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." Regents of the Univ. of Ca. v. Eli Lilly & Co., 119 F.3d 1559, 1565 (Fed. Cir. 1997). Thus, "in a case . . . in which several highly technical factual issues are presented and the other relevant factors are in equipoise, the interest of justice may favor transfer to a court that has become familiar with the issues." Id. In this case, the Court concludes that the factors weigh clearly in favor of transferring this case to the Northern District of California.

First, neither party has identified any difficulties in procuring the attendance of witnesses in California or that access to sources of proof relevant to the '033 Patent would be more difficult in California. Thus, these two factors are neutral. QGI has indicated that it would impose an additional burden on its COO to be required to travel to California to litigate this case as well as the other two cases. While the Court is not unmindful of the additional burden, it is an incremental burden and by itself does not require denying the motion. Indeed, this situation is somewhat similar to a case like Genentech in which the Federal Circuit held that it was only incidentally more burdensome for European parties to have to litigate the case in California instead of Texas. 566 F.3d at

6

1345.  Moreover, both parties are represented by experienced and able counsel; surely they have an interest in avoiding duplication of effort and can coordinate the three cases to reduce the burdens on everyone.  Thus, the private interest factors are neutral or, at worst, weigh only slightly against a transfer.

Second, the balance of public interest factors is neutral.  There are no particularized issues of local or foreign law to be resolved.  QGI has identified only a very slight difference between the time to resolve cases in the Northern District of California versus the Southern District of Ohio.  While Ohio would have an interest in the resolution of patent infringement claims of its citizen QGI, California surely has an interest in enforcing the patent rights of its resident, West.  Thus, the public interest factors are neutral.

In summary, balance of the private and public factors at worst weighs only slightly against transferring this case to the Northern District of California.  In the end, however, it is the similarity of the two cases and the California court's greater familiarity with the patents and technology which shows that the interests of justice weigh clearly in favor of granting a transfer.  While QGI has pointed to some differences between and among the patents-in-suit, it is not disputed that they have common terms and belong to the same family, which generally would

require that they be interpreted similarly. NTP, Inc. v. Research In Motion, Ltd., 418 F.3d 1282, 1293 (Fed. Cir. 2005) ("Because NTP's patents all derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents."). Having already completed claim construction on the '734 and '314 Patents, the California court is in the best position to construe the '033 Patent efficiently. While QGI argues that Judge Davila is only slightly more familiar with the patents than this Court, in a recent order denying transfer of the false marking case to this district, he expressed "existing familiarity with tungsten finger rings, their market, and other issues relevant to the patent action[.]" Doc. No. 8-2, at 5 n.4. Thus, Judge Davila's greater familiarity with the patents, the accused products, and the technology involved will, in the Court's opinion, lead to a more efficient resolution of QGI's declaratory judgment action.

In the only cases that this Court has discovered where the district judge's greater familiarity with the patents was deemed inconsequential, the forum district had no other connection with the parties and the forum district was a manifestly more inconvenient place to litigate the case. See, e.g., In re Verizon Bus. Net. Serv., Inc., 635 F.3d 559, 561-62 (Fed. Cir. 2011) (judge's familiarity with patent from a suit that settled five years earlier did not justify refusal to

transfer case where transferee district was clearly more convenient); In re Zimmer Holdings, Inc., 609 F.3d 1378 (Fed. Cir. 2010) (district judge's familiarity with single overlapping patent did not justify refusing to transfer case to a more convenient forum; plaintiff had little or no connection to forum district and most of the parties, witnesses, and evidence were located in or near the transferee district); In re Morgan Stanley, 417 Fed. Appx. 947 (Fed. Cir. 2011) (accord).  In contrast to these cases, here the parties have already been involved in a substantial amount of litigation in the Northern District of California and, thus, they both have a substantial connection with that district.  Moreover, also in contrast to these cases, Judge Davila's experience with the patents-in-suit is direct, recent, and relevant to the issues likely to arise in litigation with the '033 Patent.  Therefore, the Court concludes that this case falls under Eli Lilly and justifies transferring this case to the Northern District of California because the public and private factors are basically in equipoise and because of the Judge Davila's greater familiarity with the patents and products involved.

QGI has filed a motion to file a sur-reply (Doc. No. 10) arguing that West misrepresented the status of the California false marking case and that recent developments in that case indicate that there is further dissimilarity between that case

9

and this declaratory judgment action which weigh against a transfer.  The Court is not persuaded that filing a sur-reply brief is required.  Even if no false marking case were pending at all in the Northern District of California, given that the other considerations are in equipoise, the similarity of issues between the patents-in-suit in the two infringement-related cases and Judge Davila's greater familiary with the patents and technology would alone justify a transfer.  Accordingly, QGI's motion to file a sur-reply brief is not well-taken and is **DENIED.**

Accordingly, West's motion to transfer is well-taken and is **GRANTED.**  The Clerk of Court is **ORDERED** to transfer this case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. 1404(a).


**IT IS SO ORDERED**


Date May 22, 2012             s/Sandra S. Beckwith
                              Sandra S. Beckwith
                        Senior United States District Judge